FIRST BANK AND TRUST COMPANY OF UTICA AND UTICA TRUST AND DEPOSIT COMPANY, BANKING CORPORATIONS OF THE STATE OF NEW YORK, PLAINTIFFS-RESPONDENTS, v. NORMAN E. OGDEN, DEFENDANT-APPELLANT.

Submitted May 27, 1932—Decided October 17, 1932.

For the plaintiffs-respondents, *McKirgan & Gilson.*

For the defendant-appellant, *Lum, Tamblyn & Colyer.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered in the Supreme Court upon an order striking out the defendant's answer on the ground that it was sham in part and frivolous in part, and entering summary judgment thereon.

Suit was brought by the two plaintiff banks to recover from the defendant a balance of $8,000 and interest, which the defendant obligated himself to pay under the terms of a certain syndicate agreement, executed for the purpose of purchasing for the subscribers shares of stock of the George W. Durham Corporation, which agreement was assigned to the plaintiffs by the syndicate managers, as collateral security, for the payment of loans made by the two banks under the terms of the syndicate agreement to the syndicate managers.

The total amount of the subscriptions to the syndicate agreement was $350,000, of which the defendant subscribed $10,000 and paid $2,000 on account, leaving a balance of $8,000 due.

Under the terms of the syndicate agreement the subscribers thereto constituted and appointed the syndicate managers "their sole agents and attorneys to manage and conduct the affairs of the syndicate," and gave them "full power and authority to buy, sell and deal in and with or hypothecate and pledge any of the securities, bills and accounts, claims or demands belonging to the syndicate;" and

the syndicate managers were further authorized to borrow by means of a note or notes, such sums as may be necessary, but not exceeding the amount unpaid under the syndicate agreement and to pledge the agreement and the several payments to be made by the subscribers thereto as security for the loans.

The agreement was dated November 9th, 1925, and by the terms thereof, ten per cent. of the subscription was payable on the signing of the agreement, fifteen per cent. on or before December 1st, 1925, twenty-five per cent. on or before January 25th, 1926, twenty-five per cent. on or before February 25th, 1926, and the remaining twenty-five per cent. on or before March 5th, 1926.

Defendant paid $1,000 on signing the agreement and another $1,000 on December 29th, 1925.

On March 29th, 1926, the syndicate managers borrowed $100,000 from the plaintiff First Bank and Trust Company of Utica, and $50,000 from the plaintiff Utica Trust Deposit Company, and pledged the agreement and unpaid subscriptions as security.

All except $25,575 of the amounts subscribed for were paid and of this the defendant owed the sum of $8,000, and upon his refusal to pay, the present suit was brought.

Defendant in his answer admitted those paragraphs in the complaint which alleged that he and other subscribers entered into the syndicate agreement, whereby he promised to contribute to the capital of said syndicate the sum of $10,000 at the times and in the amounts specified in the complaint and the payment by him of $2,000. He denied those paragraphs which alleged that there was due on the agreement to the plaintiffs $150,000 and that the syndicate managers, pursuant to authority vested in them by the agreement, borrowed from the plaintiff banks the sum of $150,000 and secured and delivered to said banks an assignment of said agreement and duly pledged the agreement and the several payments to be made thereunder as security for the payment of the said loans on demand, including the payments to be made by the defendant to the said syndicate managers; and the defendant denied that the plaintiffs had demanded the payment of the

loans of the syndicate managers and of the subscribers to the syndicate agreement and that there was an unpaid balance of $25,575 as alleged in the complaint.

The defendant further denied that the $150,000 borrowed from the plaintiffs by the syndicate managers was used by the syndicate managers pursuant to the terms of the agreement for the purposes of the syndicate and denied that all of the terms and conditions of the syndicate agreement had been complied with by the syndicate managers.

Defendant further denied that demand had been made upon him for the $8,000 due on his subscription and that this sum had not been paid by the defendant or by the syndicate managers.

The affidavits and instruments submitted on the argument of the motion clearly show that these denials were sham. We are of the opinion, therefore, that they were properly stricken out as sham.

The real defense was set up in the first separate defense which was that the syndicate was formed for the specific purpose of purchasing at a certain price a certain number of shares of stock of the class specified, of the George W. Durham Corporation, and that defendant agreed to become a member of said syndicate for that purpose only, but that after the execution of the agreement and after he had paid his $2,000, the syndicate managers "entered into negotiations with the George W. Durham Corporation, looking toward a reorganization of said corporation and such proceedings were had by said corporation with the acquiescence, consent and cooperation of the syndicate managers that the rights of the members of the syndicate as stockholders in said corporation were modified and changed," &c., and that the moneys paid in were diverted; that the syndicate managers had no power to do this and by so doing breached the agreement and that the defendant, who had not consented thereto, was thereby relieved and discharged of any obligation whatsoever under the terms of this agreement as originally executed by him. This referred to the reorganization of the George W. Durham Corporation, resulting in the control thereof by the Winchester Arms Company.

This reorganization took place September 14th, 1926, nearly six months after the plaintiffs had loaned the syndicate managers the $150,000.

It clearly appears from the affidavits that at the time the agreement was pledged with the plaintiffs, March 29th, 1926, nothing whatever had been done by way of the reorganization of the Durham corporation and that at that time the agreement was being operated by the syndicate managers strictly in accordance with the terms thereof.

While the defendant in his answer alleges that the plaintiffs had notice of this variance in the agreement, it is apparent that the plaintiffs cannot be charged with any notice of such variance at the time they extended the loans to the syndicate managers.

Counsel for the appellant bases his argument largely upon the contention that the agreement was one of joint adventure and that the relations of the subscribers of the syndicate agreement were similar to those of a partnership, and from that he argues that the syndicate managers breached the good faith the law requires them to show toward the defendant and by this breach, the defendant claims he is free from his undertaking. In support of that contention he cites authorities to the effect that the courts of this state have held that an assignee takes a chose in action subject to all the equities which existed at the time of the assignment between the original parties, and argues that the banks must have known that the defendant and other parties had not paid their subscriptions at the time fixed by the agreement, which was before the banks advanced the moneys to the syndicate managers, and that the banks must have known that there must, therefore, have been some objection to the payment of the moneys, and that the banks could be in no better position than the syndicate managers themselves, and that the syndicate managers could not have enforced this agreement against the defendant, and by the same token, the banks, as assignees, cannot enforce it as against the defendant.

We do not think that the rules governing "joint adventures" and "partnerships" are applicable to the case *sub judice*.

The syndicate managers were the "agents," "attorneys" and "managers" of the parties to the agreement. They were expressly designated as such in the agreement and were not to receive any of the profits nor any compensation.

The syndicate agreement specifically provides that "nothing herein contained shall be construed to constitute the subscribers or any of them co-partners."

Counsel for the appellant further argues that the plaintiffs cannot recover because they do not occupy the position of a holder in due course of a negotiable instrument.

We do not think that in order to recover from the defendant it is necessary for the plaintiffs to occupy that position. They are entitled to stand in the shoes of their assignors on the day of assignment and cannot be affected by a breach of trust by the syndicate managers subsequent to that time.

Syndicate agreements, such as the one under consideration, are not common in New Jersey and do not appear to have been the subject of judicial decisions.

The courts of New York and other states have had occasion to pass upon syndicate agreements similar to the one in the case *sub judice*.

It was held in *Houston* v. *Coombs*, 224 *N. Y. App. Div.* 396, &c., that acts of mismanagement on the part of syndicate managers constitute no defense to an action against a subscriber for failure to pay his subscription, but constitute a cause of action against the managers individually. In that case the court struck out the answer setting up such a defense. This we think was sound.

We are of the opinion, therefore, that the first separate defense was properly stricken out as frivolous.

This leads to the conclusion that the judgment of the court below striking out the answer as sham, and the first separate defense as frivolous, should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.